May it please the Court, Tim Hayes on behalf of AT&T. The District Court committed two errors in this case. First, District Judge Sue Sponte determined that the AT&T right-of-way agreement with BNSF ran with the land. Secondly, once the Court made that determination, it failed to recognize that under Oregon law it had to make an additional inquiry. That was, even if the AT&T right-of-way agreement ran with the land, did BNSF and ODOT contractually agree that the right-of-way agreement was going to be excluded from the real property conveyance? In fact, the District Court determined that the intent of BNSF and ODOT was in fact irrelevant to this situation. Whether or not it runs with the land, why is that not controlled by Section 11A, that is to say, necessitated by movement of the tracks and therefore no reimbursement owed? Because, in fact, you're probably picking up on the language of the defendant's briefs in this case. No, I'm picking up on the language of Section 11A. Section 11A, if you look at the very beginning of it, it says, it mentions in the opinion of the railroad, capital R, the railroad is defined in the very first paragraph of the right-of-way agreement as BNSF. And so when the defendants cite that provision, they never start with the very first sentence of 11A. They talk about railroad purpose or moving railroad tracks. What's critical here is that the very first sentence, it's talking about railroad capital R, and that is BNSF. And are you arguing that your client is owed compensation under 11B? If we are arguing that we are either owed compensation by 11B or simply by the fact that we have a private easement for this particular stretch of railroad, and that under the law, in effect, if it's not governed by 11B, it would be an inverse condemnation. If AT&T is being instructed to move its spy rocket facilities by whether it be transit, P&W, or ODOT, that would be an invasion of AT&T's private easement with BNSF. But if you're arguing that your client is entitled to compensation under 11B, don't you run into the same problem that you say we've got with 11A? That is to say, it begins with, if the railroad desires the relocation. It's no longer the same railroad. BNSF is out. If BNSF directed us to relocate, directed AT&T to relocate, it would be governed by 11B. I really think the situation, there were multiple directives coming in from different parties, but I think if the directive came from TriMet, P&W, or ODOT, this would be an inverse condemnation as an interference with our private easement with BNSF. And that's a different argument from 11B, then? A difference? That's a different argument from Section 11B, then? Yes, it is. I think the issue that's being presented, I think ODOT, TriMet, and P&W are arguing that they stand in the position of BNSF under 11A, and that they have the right to direct AT&T to relocate at AT&T's expense. I'm not sure I fully understand your argument about not running with the land. Obviously, you claim that the easement runs with the land. Yes, it does. But you're saying that the obligation does not run with the subservient estate? This is to say that BNSF maintains an independent obligation to pay you, even though they're entirely outside any ownership interest in the land that's relevant, that would otherwise be relevant? If BNSF directed AT&T to relocate, we would argue that, yes, contractually under Section 11B, they would have that obligation. Just as, for example, if there's an annual rent obligation under this right-of-way agreement, BNSF would be arguing that, yes, in fact, this contractual relationship continues between AT&T and BNSF, and we want our annual rent payment. But when a property is conveyed, it consists of many different aspects. I mean, the easement clearly ran with the land because the right-of-way agreement so provided, and so did the deed. Just because the easement runs with the land, it doesn't mean that the whole bundle of sticks that all contractual obligations also run. But why shouldn't we consider the easement to include obligations in the event the easement requires relocation? Why is that not also part of the easement understanding? Well, the relocation provisions are governed by the right-of-way agreement. I mean, you're making a connection. You're saying, you know, what is the extent of the easement rights? An easement is a right. An easement is AT&T's right to have its fiber optic facilities located on a particular piece of land. The right-of-way agreement includes all sorts of obligations beyond AT&T's rights. For example, BNSF's obligations to AT&T. So every right-of-way agreement consists of an examination of the rights and obligations of both parties to that agreement. Section 13 of this right-of-way agreement only provided that in the event of a conveyance of part of the segment, which is exactly what happened here, Section 13 specifically provided that in the event of a conveyance, that the conveyance of the property would be subject to AT&T's rights. Sure. Section 13 says nothing about AT&T's obligations. Section 13 says nothing about BNSF's rights or obligations. And, in fact, AT&T's position is that those other obligations under the right-of-way agreement are governed by Section 23, where the parties also dealt with the situation of the right-of-way agreement as to who would be a successor or an assigned of the right-of-way agreement itself. In Section 13, that would have been a great place for BNSF and AT&T to have evidenced their intent that the right-of-way agreement was going to run with the conveyance of the land by saying exactly that, that the rights and obligations of AT&T would be part of the conveyance and the rights and obligations of BNSF would be part of the conveyance. Well, what about Section 23, which says, this agreement shall be binding upon and in order to the benefit of the parties hereto and their respective successors or assigned? Okay. Assigns, we can deal with that one up front because the very next sentence of Section 23 says that any assignment will require the written consent of the other party.  Successors of BNSF and AT&T agreed that their contract, that the right-of-way agreement would be governed by the law of New Jersey. Under the law of New Jersey, the term successor has a very definite meaning, and in this context it would mean a corporate merger or corporate consolidation, and that is the law of New Jersey. The Eppley's have cited a case law, a later New Jersey case law, indicating that it has a more expansive meaning. That's the Damansky case. Damansky and the other cases cited by Eppley's has been limited to the products liability arena, and in particular in 1987 at the time of the right-of-way agreement, of the execution of the agreement, the Schmaley case, the 1937 New Jersey case was definitely the law of New Jersey. So the intent of the original parties, AT&T and BNSF, which is important, one of the four elements under the running with the land test under Oregon law, AT&T and BNSF indicated their intent that the right-of-way agreement would not run with the land because it was limited to assigns, which is not involved in this case, and the term successor means a merger or consolidation situation. Let me back up and make sure I understand the argument. Are you distinguishing between an assignment and something running with the land? I would say that something could run with the land even if there were not an assignment. I'm saying in this case there was clearly no assignment because there was no written consent as called for by the contract. I think the focus here would be on the word successor, and if I might say in this Court's earlier ruling in the MCI case, the term successor was in play in that case. I think that for the running with the land issue in this case, I think it's important for this Court to distinguish. The MCI case apparently was decided under Oregon law. This Court cited Oregon case law, cited a real property treatise, and cited Maryland law. That's why it's important in this case that AT&T and BNSF agreed that the interpretation and construction of its right-of-way agreement would be under New Jersey law, and that is why the Schmaley case is so important. But also another distinction from the MCI case, and this is the biggest distinction here, is that in MCI, let's say in MCI that the MCI right-of-way agreement ran with the land, and let's say in this case the AT&T right-of-way agreement runs with the land. The important distinction here is this. In MCI, BNSF and TriMet specifically agreed that the MCI right-of-way agreement was going to run with the land. It was going to be part of the conveyance. That was their agreement, so there was no contrary intent on the part of BNSF or on the part of TriMet to exclude the MCI right-of-way agreement from the conveyance. But under Oregon law, it's TriMet versus Portland GE, the case that we cited. Oregon law, really just like the law of many states, acknowledges that in connection with a real property conveyance, the parties are free. I'm a little dense on this one. Why are we back on Oregon law if you tell me that this is governed by New Jersey law? The interpretation of the AT&T right-of-way agreement is governed by New Jersey law. It says the interpretation and the construction of the agreement. So New Jersey law is important when looking at the intent of the original parties to the right-of-way agreement, AT&T and BNSF, in construing their agreement as far as what their original intent was back in 1987. Now, here in the present case, we are dealing with the situation of, under Oregon law, whether or not the AT&T right-of-way agreement runs with the land, and that's why we're talking about distilling it. That's why I'm having trouble. Why all of a sudden do you say we're talking about Oregon law? It sounds like we're trying to construe the agreement. I think the construction of the agreement is important as far as the intent of AT&T and BNSF. For the intent element of the original agreement, you have to look at what AT&T and BNSF intended. That was in 1987. That agreement says that it's governed by New Jersey law, the construction of that agreement. But I would say that it's Oregon law that applies for the four elements of running with the land for this particular real property conveyance, although you have to look at the construction of the AT&T right-of-way agreement pursuant to New Jersey law as agreed to by BNSF and AT&T. Okay, that just got too hard for me. Okay, but there is a distinction there. AT&T would admit that the issue of whether or not this runs with the land is governed by Oregon law, by the four element test. Tell me why, under whether you're talking Oregon law or New Jersey law, this does not run with the land, because I'm inclined to think that it might. That the right-of-way agreement runs with the land? Why are you arguing that this does not run with the land? The obligation on the part of the successor in interest, I'm now using the word term successor in interest, not in the narrow sense that you're arguing for, would have the same right that the railroad originally had, Burlington, Northern, Santa Fe. Well, the right-of-way agreement does not run with the land. AT&T's argument is that ODOT is not a successor to BNSF. Under New Jersey law, the definition of successor, that is the basis for AT&T's argument as to why it does not run with the land. The second aspect of this, and I think this is the most important, as I was going to say, the distinction from the MCI case, is that Oregon law recognizes that parties may carve out from any conveyance of real property whatever they so desire. There's nothing special about real property law. It's simply contract law. The TriMet v. Portland GE case specifically acknowledges that parties can carve out, reserve, or accept from any conveyance whatever they desire. In this case, BNSF and ODOT, in the conveyance agreement, specifically excluded the AT&T right-of-way agreement from this conveyance. The parties listed on a 54-page schedule, Schedule D to the conveyance agreement, all of those contracts that were going to be conveyed and included as part of this real property transfer. The AT&T right-of-way agreement was not on that 54-page schedule. And then BNSF and ODOT went one step further and they said, hey, we want to make it clear that certain contracts were not left off Schedule D, off this 54-page schedule, were not left off through inadvertence, and there's two types of agreements. One is a real service agreement, which is the P&W agreement, and secondly is any fiber optic cable installation agreement is not being left off through inadvertence. It's intentional. So ODOT and BNSF, in the donation contract, specifically excluded the right-of-way agreement as part of the conveyance of property. So under the TriMet v. Portland GE case, under Oregon law, that exception, that exclusion should be recognized. That is the intent of the parties. And in the deed in this case, the deed specifically stated that the property is being conveyed subject to easements and it also provided that the donation agreement was going to survive the execution of the deed and that all the terms and conditions of the donation contract would survive. So when looking at the deed and the donation contract between ODOT and BNSF, it's crystal clear that both of those parties intended the AT&T right-of-way agreement to not be part of the conveyance of the real property. Okay. Why don't we have them on the other side, and we'll give you a minute to respond. Thank you. May it please the Court. I'm John Stevens, and I represent the Tri-County Metropolitan Transportation District, TriMet, a defendant in this case. Are you going to split the argument with court counsel? I was just going to explain. Thank you, Your Honor. I will do ten minutes, and then my co-defendants will take the other five minutes. Okay. Hopefully, I'll notice the time here. Conceptually, we think that it is proper and really necessary to approach the right-of-way agreement in terms of what it is. It's an easement. It doesn't and shouldn't be looked at as a contract or a covenant. It's a real property document. It's not a contract as such. The easement created a burden on the railroad right-of-way. That burden was appurtenant to the right-of-way, and it ran with the land. And if it didn't run with the land, then this would be an easy case. We would simply tell, or I should say the State of Oregon would simply tell AT&T to remove its fiber optic facilities from the right-of-way, and that would be that. So it's clear that this burden did run with the land. That's also clear when you look at Section 23, or the intent that it would run with the land, that successors are bound. And in addition, when you look at that. What's your response to the argument that successor has a specific and quite narrow meaning because it's New Jersey law that doesn't interpret successor as we might ordinarily interpret that term? Two things, Your Honor. Number one, this court, both when it's operating under federal question jurisdiction or operating under diversity jurisdiction, follows Oregon choice of law rules. Under Oregon choice of law rules, the key case is Irwin v. Thomas, which we've cited in our red brief. And it takes a particular view of how it is that choice of law decisions are made. And the first thing that an Oregon court looks at is whether it has a false conflict or not. And a false conflict arises where there's a difference of law that really doesn't amount to anything in the case. And then the second thing that the Oregon courts look at, and whether there's a false conflict or not, is whether the other state has an interest in the application of its law to the particular dispute. So it's very driven toward principles of comity and recognizing the sovereignty of other states. Maybe I'm misunderstanding the argument of a New Jersey law. Is there some provision in the right-of-way agreement that specifies that New Jersey law will be a law? It is. And where can I read that? At the very end of the right-of-way agreement, it specifies. If you can give me the ER site, that would be great. Okay, let me. ER 178. 178? Yeah, Section 26. Interpreted, construed, and enforced in accordance with. Well, if that, I mean, why do we get false conflicts and so on if the contract specifically says, we interpret it in accordance with New Jersey law? Because, well, number one, because this is because if the state, no party in this case is a New Jersey citizen. And so it's not a case where the state of New Jersey would care about. No, but my question is much simpler than that. The parties can, by agreement, decide that they'll have the law in New Zealand apply. And even though all the parties are in Washington State or wherever they're going to be, if the parties have by agreement decided the law in New Jersey applies, that's the contract. And I don't get into all this conflict stuff. Right. And I guess I'm not accepting that proposition, Your Honor. And we've cited cases in our brief that an Oregon court, particularly where you're involving real property and interest in real property that's located in the state, is in a case where you don't have a New Jersey citizen, I think, would be inclined to follow Oregon law. But let me get really more to what I think is more important, will help resolve this issue. And that is that we've cited the Damansky case, which is a recent New Jersey case, the case of the Shmoley case that they've cited dates from the 1920s. And in the Damansky case, the court there noted that we have ‑‑ there is old New Jersey law that dealt with or set up a restricted definition of what the word successors mean. But we now take a much more common sense approach to what it is that the word successors means. And that's what the court did there. And it lined it up with the law of the other states, and particularly the law of Oregon. So that really gets back to the thing that there really isn't a conflict between Oregon law and New Jersey law. The term successors would apply in a common sense, ordinary meaning. And we've cited the dictionary definition that the classic definition of a successor is someone who succeeds entitled to land. And that's exactly what we're dealing with here with respect to ODOT. How does Damansky line up in terms of the court equivalency with the court that decided Shmoley? One, Shmole, or whatever it's pronounced, is the Court of Errors and Appeals of New Jersey. I noticed that Damansky is the Superior Court of New Jersey Appellate Division. Can that overrule? It refuses to follow. When I was doing my research on it, I didn't have the sense that the line up of the courts, and it was a little hard to follow in the names, but I didn't have the sense that the Damansky case was in a position to overrule what the Shmoley court had said. Rather, it was applying principles of where New Jersey law had evolved over the 60 or 70 years since the Shmoley case was decided. Coming back, the burden, as we indicated, was appurtenant to the land and it ran with the land. Excuse me, just to wrap that up. So if you're wrong about New Jersey law, do you lose? No, we don't, Your Honor, because, as we've indicated, the Oregon law, well, under Oregon conflict of laws principle, as stated in Irwin v. Thomas, Oregon would not necessarily simply apply New Jersey law. So you have to get around New Jersey law, in other words. You either get around because New Jersey law isn't in conflict or Oregon law won't look at it given it's a real property contract. Correct. That's fine. I just want to understand. An Oregon court would not look at it in this context, particularly where the state of Oregon was the property owner. Yeah, right. Very neutral principle. The next step, and we think that this is the crucial one, is to look at what is, though, the burden that was on the right-of-way as a consequence of this easement, because AT&T did not have an unrestricted right to use the property any way that it wanted to. And the key provision of the right-of-way agreement is Section 1D that makes clear that AT&T's right to use the fiber optic cable easement is subject to and subordinate to the railroad's right to operate and maintain the railroad tracks. Number two, it's right to convey the land. And number three, it's right to relocate tracks. And then Section 11, then, when you read it in the context of Section 1D, isn't a separate covenant. It's simply a power held by the railroad or its successor to implement Section 1D, that when the railroad or its successor determines that it's necessary to relocate the fiber optic cable for railroad track placement or railroad operation purposes, then AT&T is obliged to move its fiber optic facilities at its expense. Now, who's the railroad in this case? In this case, the railroad, as successor, the State of Oregon, is in the position of railroad under the right-of-way agreement. And I might add that there's some important provisions about that. I'll jump ahead. When the State of Oregon took the right-of-way in the quitclaim deed, the quitclaim deed specifically provides that it is subject to all easements. So there really is no issue in this case about somehow there being a carve-out with respect to the fiber optic cable. That was part and parcel of how that quitclaim deed operated. I might also add here that the exception in the donation contract dealing with fiber optic cable easements, that is not referring to AT&T's fiber optic easement. It's referring to the existence of Burlington Northern fiber optic easements and its desire to, in those cases where it didn't already have an easement, its desire to retain an easement for its purposes for fiber optic cables not yet. I'll finish up quickly. But with regard to the Court's question on successors, the State of Oregon has said in that when it took the contract, it warranted that it would use it for public transportation purposes. It also provided that it took it subject to Pacific and Western's railroad easement in the property. And then now TriMet has taken a 50-year lease of the property to use it for railroad purposes at all. So it is in the position of railroad, but when it acts it's acting in furtherance of railroad purposes precisely as contemplated by the right-of-way agreement. Okay, well you've almost stayed within your ten. So they've got four minutes and ten seconds. Let's bump that back up to five. So you can have your expectation interest. Please support Dan Howard. Are you going to split or is it just you? I think it's just me at this point. We're on limited time here. On behalf of Portland and Western Railroad, a couple of points to make. One of the principal arguments of AT&T here is that in this 1998 contract they carved out rights and said that certain rights weren't intended to be passed along related to this easement. And one of those rights that was excluded was this right to demand relocation of the cables. One problem with that is that P&W's easement, which was easement giving it a right to conduct railroad operations within this segment of the railroad corridor, potentially indefinitely, was 1997, before that 1998 contract. And the easement, the terms of the easement are on page 192 of the record, and it pretty clearly states here, the easement shall permit grantee to enter and remain on the rail line corridor for the sole purposes of operating and or developing rail service over or constructing, maintaining, replacing, or lawfully removing any rail facilities, etc., etc. So that right had already passed as of 1997 to P&W. So whether it was excluded in the subsequent contract or whether they even intended that, which we do not concede, but even if they did intend that, they couldn't. And one of the cases we cited regarding that was a case called Nagus, which makes that very same point. I'd also like to briefly address Section 13. AT&T is relying very heavily on Section 13, saying, well, because it says subject to AT&T's rights and it doesn't specifically identify that AT&T keeps its obligations, therefore that's indicative of an intent that they would get to keep their easement but be relieved of this burden of having to relocate. The problem with that is that they're taking out of context the entire phrase here in Section 13, and I think it's important to read the whole thing. It says, in the event of any sale, transfer, or conveyance of the railroad segment or portion thereof, other than one covered by the provisions of Section 11 or Section 12, and Section 12, for instance, deals with eminent domain, such sale, transfer, or conveyance shall be subject to any existing rights of AT&T under this agreement. Well, the other then language is identifying, look, we recognize that certain types of conveyances here, AT&T is not going to have the rights, whatever rights they already have under Section 11 to demand reimbursement, they're not going to have those rights in the case of one of these special types of conveyances like condemnation by the government. So basically the remainder of that sentence that they're relying on heavily is to clarify, but in most circumstances they will retain whatever rights they have under Section 11. That's a far different thing from saying their rights will be expanded or their obligations will be diminished under that section. And I think, I mean, the analogy would be, you know, a statement of one party's rights doesn't automatically mean that the other party doesn't have, doesn't retain similar rights. I mean, if you get a, if you go into court for a restraining order and it says, plaintiff may not come within 10 yards and verbally harass the defendant, doesn't mean that the defendant is free to do that to plaintiff. So I just think it's a logical fallacy there to assume that because it states the rights are subject to, that any obligations on the part of AT&T thereby disappear. Another argument that P&W has made is that we received an assignment by virtue of this 1997 easement because it does, as I mentioned, address that P&W has a right to develop the rail facilities potentially and definitely by virtue of this easement. AT&T has said, well, you know, Section 23 says there can be no assignment without our consent. We didn't provide our consent. Therefore, there's no assignment. But they're ignoring a very critical, a very critical part of this Section 23, which states, it's at the end of Section 23 of the Rail Agreement, quote, no unconsented assignment shall relieve AT&T of its obligations or liabilities. Now, under New Jersey law, a non-assignment clause to actually invalidate an assignment has to be clear. And there is some language in the beginning of that Section 23 is talking about validity in the case of an assignment that's unconsented, but, and they're relying on that language alone. However, I don't see how they can say, they can ignore this phrase, no unconsented assignment shall relieve AT&T of its obligations or liabilities. Okay. Thank you very much. Would you like a minute for response? That section that he just read specifically says that any assignment that is not consented to is invalid. And under New Jersey law, that's exactly what it means. In the choice of law issue, New Jersey is AT&T corporate headquarters. And there is a distinction between Oregon law and New Jersey law. Donanski has been limited to the products liability context by the New Jersey Supreme Court in the case cited by AT&T. The Lefevre case, 734 Atlantic 2nd, 290. So the Schmaley case continues to be the definition of successor in New Jersey. By the way, Black's Law Dictionary has separate definitions for successor and successor in interest, one of which is identical to the definition of successor to the Schmaley case definition under New Jersey law. It's interesting that P&W is arguing, they're arguing that they are the successor to BNSF, which is contrary to the holding of the district court that ODOT is the successor to BNSF. So there's a difference there between P&W and ODOT. But I'd like to conclude by just indicating factually what the understanding of P&W and the understanding of BNSF was after this conveyance took place, both after the conveyance of the service easement to P&W and after the donation contract to ODOT. And this is found at ER 123, and this is an April 4, 2005 letter from P&W to Burlington Northern. So this is after P&W had the service easement, and they were writing a letter to BNSF about this very relocation that we're dealing with. And they wrote that the reference of the letter was BNSF certain reservations. So this is from P&W to BNSF. Reference of the letter is BNSF certain reservations, such as right-of-way agreement with AT&T. So P&W wrote a letter about this relocation. They wrote to BNSF, and the reference of the letter is talking about things that were reserved unto BNSF, and they specifically referenced this right-of-way agreement. And then in April 2006, BNSF wrote a letter to AT&T about this relocation, and BNSF said neither P&W nor TriMet are parties to the July 21, 1987 right-of-way agreement. This relocation is not governed by the agreement, and that BNSF has not requested any relocation of facilities. So BNSF and P&W certainly understood that, post-conveyance, that BNSF continued to be the railroad, capital R. Thank you very much. Thank both sides for their helpful arguments in AT&T Communications East versus BNSF Railway. That's now submitted for decision, and we are in adjournment for the day. We'll reconvene on Wednesday morning. Thank you very much.
judges: Fletcher, Fisher, Roll